UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

-vs-                                                                          Case No.:  2:08-cr-164-FtM-29SPC

MARQUIS DISHON YOUNG
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on Defendant's Amended Motion to Suppress Identification Evidence and Evidence Seized as a Result of the Search Warrant (Doc. #25) filed on February 14, 2011, and the Government's Response to Amended Motion to Suppress Identification Evidence and Evidence Seized as a Result of the Search Warrant (Doc. #26) filed on February 14, 2011.  A hearing was held before the undersigned United States Magistrate Judge on February 16, 2011.  The Defendant was present and represented by Assistant Federal Public Defender Frank Zaremba.  The Government was represented by Assistant United States Attorney Jeffrey Michelland. At the hearing, the Government called Detective Michael Forbes.[1]  The Defendant did not call witnesses nor submit any items of evidence.

Young is charged with Count One - possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(C), within 1000 feet of an elementary school; Count Two - using and carrying a short-barreled shotgun during and in relation to a drug trafficking crime, and

---

[1] Forbes was a Detective with the Fort Myers Police Department at the time of the events at issue in this Motion.  Forbes was promoted to Sergeant approximately one month prior to the hearing. (Tr. 8:23-9:1).

brandishing said firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(B)(i), and 18 U.S.C. § 2; and possessing a firearm with a barrel measuring approximately 12 1/4 inches in length that was not registered to him as required by 26 U.S.C. § 5841, in violation of 28 U.S.C. §§ 5861(d) and 5871, and 18 U.S.C. § 2; and Forfeiture.

TESTIMONY AND EVIDENCE

*Detective Michael Forbes*

Michael Forbes has been with the Fort Myers Police Department (FMPD) since July 1999 and was a Detective at the time of the incident. (Tr. 9:15-18). In 2008, Detective Forbes was working with a confidential informant (CI) who informed him that there was illegal drug trafficking occurring at 2217 Cuba Street, Unit #1, and identified an individual by the name of "Marquis" who sold drugs at that location. (Tr. 10:12-12:4). No last name was provided to Detective Forbes at this time. (Tr. 39:19-20). Subsequently, the CI who had informed Detective Forbes of the activity at 2217 Cuba Street, Unit #1, performed two controlled drug buys at the residence. (Tr. 11:14-20).

On Tuesday, May 13, 2008, at approximately 6:02 P.M., Detective Forbes was working in an undercover capacity posing as a purchaser of street level drugs at 2217 Cuba Street, Unit #1. (Tr. 10:7-18). During this operation, all contacts and conversations were monitored by the use of a concealed audio/video recording device by Detectives Rebecca Prince and Candice Derrig. (Tr. 20:24-21:7). On this date, Detective Forbes drove his undercover vehicle to the area of 2217 Cuba Street, Unit #1. Detective Forbes exited his undercover vehicle and walked up to the front door of Unit #1. Detective Forbes then knocked on the front door and made contact with a black male later identified as Marquis Dishon Young. (Tr. 12:18-13:14). As Young opened the front door, Young pointed a short-barreled shotgun that was strapped to his right hand at Detective Forbes. (Tr. 14:10-

20). Detective Forbes told Young there was no need that for the gun and Young replied, "You can never be too sure." (Tr.15:9-15).

Young then asked Detective Forbes what he wanted and he replied, "Cake." "Cake" is a slang term for cocaine. (Tr. 15:24-16:5). Young then invited Detective Forbes inside the residence. Young still retained control of the shotgun as Detective Forbes entered the residence. (Tr. 16:20-24). Once inside the residence, Young directed another black male, later identified as Vincent Brown, to retrieve the cocaine. (Tr. 17:18-19). Brown then went into the kitchen area and opened the kitchen drawer and retrieved the cocaine. (Tr. 18:1-6). Brown then returned to Detective Forbes and handed him the cocaine. (Tr. 18:16-20). In exchange, Detective Forbes provided Young with $20.00 from FMPD funds. (Tr. 18:18-25). Detective Forbes then returned to his undercover vehicle and drove out of the area. Detective Forbes testified that had conducted numerous undercover buys of street level drugs prior to the buy at issue in this case. (Tr. 28:19-29:6).

According to Detective Forbes, Young was wearing a black tank top shirt and black shorts. (Tr. 23:1-3). Young appeared to have medium length dreadlocks. (Tr. 14:6-9). Young was approximately 5'9" in height and weighed about 155 pounds. (Tr. 29:7-17). Young had a dark complexion and appeared to be in his early twenties. (Tr. 30:24-31:3). Brown appeared to have a medium length Afro-style haircut. Brown was approximately 5'7" in height and weighed about 160 pounds. Brown had a light complexion and appeared to be in his late teens. (Tr. 29:22-30:17).

Detective Forbes left the area and retained custody of the cocaine sold to the Detective by Young. Detective Forbes subjected a portion of the cocaine to a field test and received a presumptive reaction to the presence of cocaine. Detective Forbes recognized Young from prior occasions when he was patrolling. He testified that he would see Young loitering around on the side

of the road near Young's house. (Tr. 44:4-22). Detective Forbes retrieved a photograph of Young and a photograph of Brown from the Lee County Sheriffs Office photograph database after the undercover buy. (Tr. 25:2-9). He had never previously searched the database for Young before. (Tr. 45:23-46:4). Detective Forbes testified that there were numerous different booking photographs of Young in the database taken at different times. (Tr. 26:12-27:15).

Shortly after the undercover buy, Detective Forbes drafted a probable cause affidavit and application for search warrant. On May 23, 2008, Detective Forbes submitted the probable cause affidavit and application for search warrant to a state court judge. The undercover buy was within 10 days of the application for search warrant. The search warrant affidavit contained the following information in support of probable cause:

> 3. Based on your affiant's training, experience and participation in this and other drug related investigations, your affiant knows the following:
>
> a. It is common for drug dealers to conceal within their vehicles, residences or businesses or within the curtilage of their residences or businesses, drugs, currency, financial instruments, other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of sums of money made in drug related offenses.
>
> b. Also based on your affiant training and experience, drug dealers commonly have in their possession (at their residences and or their business), firearms, including, but not limited to, handguns, rifles, shotguns, and automatic weapons. Said firearms are most often used and or maintained in order to protect and secure a drug dealers' property and or person from robbery.
>
> 4. Your affiant received information from a confidential source of information referred to as CI #07-23 advising drugs were being sold at 2217 Cuba Street, unit #1 by people within and associated with the residence. Your affiant conducted surveillance at the listed location during various occasions. During surveillance your affiant witnessed numerous people arriving at the residence during various times. Your affiant witnessed most of the people leave from the residence within five minutes of arriving. Based on your affiant's drug investigation experience, this type of activity is consistent with that of people coming and going from a residence for the purpose of dealing in illegal drugs. The visits are short in duration because the

relationship between the drug dealer and the drug purchaser is not personal but strictly business from a buyer-seller standpoint.

5. The following information pertains to a Confidential Informant #07-23, hereinafter referred to as CI. The CI agreed to assist the Fort Myers Police Department Special Investigations Group. The CI has continued to stay in contact with members of the Fort Myers Police Department Special Investigations Group for the past three (3) years providing intelligence pertaining to subjects and locations involved in the distribution of controlled substances. This information has been corroborated through other sources of information and surveillance. This information has proven to be reliable. The CI has conducted controlled purchases of illegal drugs to include cocaine, heroin, MDMA and marijuana, at numerous locations that have resulted in the location, identification, and service of over fifty drug-related search warrants. Subsequent to the execution of these search warrants, dozens of subjects have been arrested for the distribution and/or possession of controlled substances and illegally possessed firearms.

6. Within the past twenty (20) days your affiant, with the assistance of the CI, made a controlled drug buy from within 2217 Cuba Street, unit #1. The CI was searched by your affiant prior to the buy and no money or contraband was located. The CI was equipped with a concealed electronic transmitting device that allowed his/her conversations to be monitored by your affiant during the operation. Your affiant provided the CI with U.S. currency from Fort Myers Police Department funds. The currency was recorded prior to the operation for possible future identification.

7. Your affiant then drove the CI to the area of the described location and allowed the CI to exit the vehicle and approach the residence on foot. Your affiant observed the CI approach the front door of the described residence. The CI then knocked on the front door of 2217 Cuba Street, unit #1 and made contact with an unidentified black male who exited 2217 Cuba Street, unit #1 to meet the CI just outside the residence. The CI ordered a specific amount of cocaine from the black male. The black male invited the CI into the residence as he went to retrieve the requested cocaine. The black male then went to the kitchen area and retrieved the cocaine from a cereal box that was located on top of the refrigerator. The unidentified black male handed the CI the amount of cocaine requested and in return the CI handed the black male the U.S. currency supplied by your affiant. Upon the completion of the transaction, the CI left the residence and the black male remained inside the residence with the money supplied by the Fort Myers Police Department. The black male was later identified as "Marquis Young."

8. The CI then walked away from the described location and returned directly to your affiant. The CI did not contact anybody enroute to the residence or between the time of the transaction and returning to your affiant. The cocaine was turned over to your affiant by the CI immediately upon contact.

9. After the purchase of the suspected cocaine from within the described location, your affiant again searched the CI and no contraband or money was located. The suspected cocaine purchased by the CI was submitted to a field-test by your affiant and it yielded a positive reaction to the presence of cocaine. The cocaine was packaged by your affiant and turned over to the Fort Myers Police Department Evidence Custodian.

10. Within the past fifteen (15) days your affiant, with the assistance of the CI, made a second controlled drug buy from within 2217 Cuba Street, unit #1. The CI was searched by your affiant prior to the buy and no money or contraband was located. The CI was equipped with a concealed electronic transmitting device that allowed his/her conversations to be monitored by your affiant during the operation. Your affiant provided the CI with U.S. currency from Fort Myers Police Department funds. The currency was recorded prior to the operation for possible future identification.

11. Your affiant then drove the CI to the area of the described location and allowed the CI to exit the vehicle and approach the residence on foot. Your affiant observed the CI approach the front door of the described residence. The CI then knocked on the front door of 2217 Cuba Street, unit #1 and made contact with "Marquis Young." Young exited 2217 Cuba Street, unit #1 and met CI just outside the residence. The CI ordered a specific amount of cocaine from Young. Young handed the CI the amount of cocaine requested in return the CI handed Young the U.S. currency supplied by your affiant. Young appeared to have the requested amount of cocaine on his person. Upon the completion of the transaction, Young re-entered the residence with the money supplied by the Fort Myers Police Department through the CI.

12. The CI then walked away from the described location and returned directly to your affiant. The CI did not contact anybody enroute to the residence or between the time of the transaction and returning to your affiant. The cocaine was turned over to your affiant by the CI immediately upon contact.

13. After the purchase of the suspected cocaine from within the described location, your affiant again searched the CI and no contraband or money was located. The suspected cocaine purchased by the CI was submitted to a field-test by your affiant and it yielded a positive reaction to the presence of cocaine. The cocaine was packaged by your affiant and turned over to the Fort Myers Police Department Evidence Custodian.

14. On May 13th, 2008, your affiant was working in an undercover capacity posing as a purchaser of street level drugs. This operation was to target street level drug sales throughout the City of Fort Myers. Detectives Candice Derrig and Rebecca Prince monitored all conversations and contacts. Your affiant drove his undercover vehicle to 2217 Cuba Street, unit #1. Your affiant exited his undercover vehicle and walked

up to the front door. Your affiant then knocked on the door. After a short time a black male immediately identified by your affiant as Marquis Young, answered the door and asked your affiant what he wanted. Your affiant advised Young that he wanted cocaine. Young then invited your affiant inside the residence as he went to retrieve the cocaine. Young then directed another black male later identified as "Vincent Brown" to retrieve the requested cocaine for your affiant. Your affiant then observed Brown go into the kitchen area and retrieve two bags of cocaine from out of the cabinet drawer in kitchen. Your affiant then handed Young twenty dollars ($20.00) from FMPD funds that was photocopied prior to the operation for inclusion in the case report file. In exchange for the money Brown provided your affiant with the requested cocaine. Your affiant then returned back to his undercover vehicle and drove away out of the area.

15. Your affiant left the area and retained custody of the cocaine sold to your affiant by Brown and Young. Your affiant subjected a portion of the cocaine to a field test and received a presumptive reaction to the presence of cocaine.

The warrant was signed by Judge James H. Seals on May 23, 2008. On May 28, 2008, Detective Forbes executed a search warrant at 2217 Cuba Street, Unit #1, with the assistance of the FMPD S.W.A.T Team. (Tr. 34:15-20). During the search of the residence, Detective Forbes located Young in the rear bedroom along with another black male lying on the couch in the living room. (Tr. 34:24-36:6). Detective Forbes conducted a search of the residence and located underneath the living room couch the same short-barreled shotgun that Young displayed when Detective Forbes purchased the cocaine. (Tr. 36:7-13). He testified that it was the same color, dimensions, look, and had a strap like the shotgun Young had pointed at him during the undercover drug buy. (Tr. 36:7-15). The shotgun was seized, and cocaine and a 16-gauge cartridge that was in the shotgun were also seized. (Tr. 36:22-37:5).

Forbes testified that he did not know who Young was at the time of the May 13, 2008 undercover buy, but had seen him around the neighborhood. (Tr. 24:14-17). He only knew him as Marquis from the confidential informant. (Tr. 24:21-23). Shortly after the May 13, 2008 undercover buy, but on the same day, he went to the police station and accessed the Lee County database. (Tr.

25:2-15). He searched for the name "Marquis" in the database and identified Marquis Young as the individual he had just seen at the undercover buy and who had just pointed a shotgun at him at 2217 Cuba Street, Unit #1. Numerous booking photographs for one individual by the name of "Marquis" came up. (Tr. 25:2-15). When Forbes identified Marquis Young as the individual he had just seen at the drug buy, he stopped looking through the database. (Tr. 25:16-28:2). He testified that he was "100% sure" that the photograph was Marquis Young, whom he had just seen. He does not recall looking at any other photographs in his search to identify the Defendant. (Tr. 26:20-22). He also identified Brown through this method. (Tr. 28:3-11). When Forbes described the Defendant in the probable cause affidavit, he testified he did it from memory and notes, which he no longer has. (Tr. 23:19-24:2). He did not know Defendant's first name until the CI informed him of it and did not know Defendant's full name until after he had searched and found the booking photograph.

## DISCUSSION

The Defendant moves the Court to suppress (1) the in-court identification of the Defendant because it is based on an impermissible out-of-court identification and (2) moves for suppression of the search and seizure as a result of the search warrant. Specifically, Defendant argues that Detective Forbes identified the Defendant from one photograph and that the search warrant lacked probable cause because of the lack of information regarding when the alleged illegal transaction with the confidential informant took place, the questionable information regarding the identity of the residents of the apartment at any time, the failure to link the cocaine purchase in any permanent manner to the apartment, and the general paucity of facts set forth in the affidavit. The Government asserts that the original identification was not unduly suggestive and was reliable. The Government further asserts there was probable cause to support the issuance of the search warrant, and in any event,

because there is no indication the police acted recklessly or lacked a reasonable belief in the existence of probable cause, the good faith exception applies and the search warrant was valid.

### *(1) Whether the Identification was Impermissibly Suggestive*

Defendant argues that the one photo "show-up" that Detective Forbes used to identify Marquis Young as the individual who sold him cocaine at 2217 Cuba Street, Unit #1 was impermissibly suggestive. Young maintains that Detective Forbes' self-imposed show-up identification was so suggestive and conducive to irreparable mistaken identification that if it is admitted at trial, he will be denied due process of law. Defendant asserts that the Court should suppress the in-court identification of Defendant as it will be the fruit of an impermissible out-of-court identification.

In United States v. Diaz, the Eleventh Circuit addressed a defendant's claim that the district court violated his constitutional rights when it admitted evidence of an out-of-court identification and allowed an in-court identification allegedly based on unduly suggestive government procedures. 248 F.3d 1065, 1102 (11th Cir. 2001). The Diaz court noted that the Eleventh Circuit has established a two-step analysis in assessing the constitutionality of a trial court's decision to admit an out-of-court identification:

> First, we must determine whether the original identification procedure was unduly suggestive. If we conclude that it was suggestive, we then must consider whether, under the totality of the circumstances, the identification was nonetheless reliable. Factors to consider in determine whether the identification was reliable include: (1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification.

Id. at 1102 (citing Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972)).

In this case, Detective Forbes identified the Defendant by searching the Lee County database for the name "Marquis" that was frequenting that area and possibly living at that address. (Tr. 25:2-

9). "Marquis" was a name that was provided to him through a reliable confidential informant with whom Detective Forbes had previously worked and who had conducted two drug buys at 2217 Cuba Street, Unit #1. The CI had informed Detective Forbes that the individual who sold him drugs in the residence was named Marquis. He testified that when he searched for the name "Marquis" that "numerous photographs came up, and it was the same individual, and I was able to identify him." (Tr. 28:10-11). Thus, from this testimony, it appears that numerous photographs came up, but they were all photographs of the Defendant. And there was no question in Detective Forbes' mind that the individual in the photograph was the one he saw during the undercover buy at 2217 Cuba Street, Unit #1. He was 100% sure that the photographs were all of the same individual. (Tr. 27:12-24, 28:12-18). He was sure because he had encountered Defendant for a period of time inside 2217 Cuba Street, Unit #1 and had looked him in the face when he encountered him during a hand-to-hand drug buy. (Tr. 27:25-28:2, 19:3-5). He conducted the search for "Marquis" in the Lee County database shortly after he conducted the undercover drug buy. (Tr. 25:8-9). Thus, Defendant's face would have been fresh in his mind.

The Court is aware that showing only one photograph in certain instances can be determined to be unduly suggestive. See United States v. Carter, No. 2:05-cr-67-FtM-29-DNF, 2005 WL 3556050, *4 (M.D. Fla. Dec. 28, 2005) (noting that "[w]hile showing only one photograph to a witness is not *per se* unduly suggestive, a long line of Eleventh Circuit cases have found such undue suggestiveness when a single photograph is utilized") (citations omitted). In this instance though, the facts of the case do not support a finding of undue suggestiveness. Therefore, the Court cannot conclude from the facts of this case that the one-photo "show up" was impermissibly suggestive as this was not a situation where a single photograph of Defendant was shown to the Detective prior

to his undercover buy and suggested to the Detective that this was the individual. Detective Forbes based his identification of the Defendant from the Lee County database on his own independent recollection shortly after he had just encountered him in a hand-to-hand drug buy. (Tr. 26:12-28:2). Thus, the Court finds that the photographic identification of the Defendant was not impermissibly suggestive.

Even if the Court had found the photographic show up was impermissibly suggestive, in further analysis, the Court would find that under the totality of the circumstances the identification of Defendant was reliable under the factors set forth by the Eleventh Circuit in United States v. Diaz. Detective Forbes made a hand-to-hand purchase of cocaine from the Defendant on May 13, 2008, and had ample opportunity to view the Defendant in the apartment as he answered the door. Defendant Young stood by the Detective while the drugs were being obtained, and the Detective looked Young in the face when he gave him the money for the cocaine. (Tr. 14:10-19:5). During this time, he was in close proximity to the Defendant for as long as five minutes. (Tr. 19:21-20:2). Detective Forbes was also paying attention and testified that he maintained surveillance of the Defendant inside the residence while the cocaine was being obtained by the other individual because he had the shotgun still strapped around his arm and the Detective "wanted to make sure [he] was able to view the whole entire area I was in." (Tr. 17:7-14). With regard to the accuracy of the description, Detective Forbes was able to identify Defendant Young with particularity in the probable cause statement and had never given a description that was inconsistent with Defendant, and testified that there was "no question in [his] mind" that the photograph was the individual he saw in the residence as he believed his identification of Defendant was accurate based upon his contact with him. (Tr. 12:28-15, 28:12-15). Finally, there was a short time between the undercover drug buy and

the officer's search and confirmation of the Defendant's identity when he searched the Lee County database shortly after the undercover buy. (Tr. 25:8-12). Thus, this Court respectfully recommends that Defendant Young will not be deprived of due process by the admission of the out-of-court identification.

### *(2) Whether the Search Warrant Was Based on Probable Cause*

Defendant argues that any evidence obtained at 2217 Cuba Street, Unit #1 should be suppressed because the search warrant was based on an affidavit that failed to allege with specificity facts sufficient for a determination of probable cause. Specifically, Defendant Young alleges that given the totality of the circumstances, including the lack of information regarding when the alleged illegal transaction with the confidential informant took place, the highly questionable information regarding the identity of the residence of the apartment at any time, the failure to link the cocaine purchase in any permanent manner to the apartment, and the general paucity of facts set forth in the affidavit, the warrant was not based on probable cause.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." United STates v Martin, 297 F.3d 1308, 1312 (11th Cir. 2002). In issuing a valid search warrant under the Fourth Amendment a judge is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Robinson, 62 F.3d 1325, 1331 (11th Cir. 1995) (citing Illinois v. Gates, U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). However, a judge's decision to issue a warrant may not be based on *per se* rules regarding probable cause or on knowledge gained during prior illegal searches. Murray v. United States, 487 U.S. 533, 542, 108

S. Ct. 2529, 101 L. Ed. 2d 472 (1988). "Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). The Court in United States v. Gates held that a probable cause determination is made under a totality of the circumstances test. 462 U.S. at 230-35.

Upon review of the search warrant (Govt. Ex. #1), the Court finds that it is supported by probable cause under the totality of the circumstances. As outlined above, the following facts were clearly stated in the affidavit and application for the search warrant: Detective Forbes conducted surveillance on various occasions, and witnessed what appeared to be drug transactions. Within 20 days of the issuance of the search warrant, a CI who was proven to be reliable, made a cocaine purchase from within 2217 Cuba Street, Unit #1, from a black male who was later identified as Marquis Young. Within 15 days of the issuance of the search warrant, the CI made a second controlled drug buy of cocaine from Marquis Young from within the residence. An "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the CI's] tip to greater weight than might otherwise be the case." Gates, 462 U.S. at 234. On May 13, 2008, Detective Forbes, in an undercover capacity, made a controlled purchase of cocaine from inside the same residence from Marquis Young. Finally, the warrant was signed on May 23, 2008, within 10 days of the undercover purchase. Thus, the search warrant affidavit established a fair probability that evidence of drug activity or drugs would be found at the Defendant's residence. Therefore, the motion to suppress evidence seized at the location should be denied.

Accordingly, it is

**RESPECTFULLY RECOMMENDED:**

The Amended Motion to Suppress Identification Evidence and Evidence Seized as a Result of the Search Warrant (Doc. #25) should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this ___18th___ day of February, 2011.

                                                     _____
                                                     SHERI POLSTER CHAPPELL
                                                     UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record